NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1149

STATE OF LOUISIANA

VERSUS

BILL ERIC WINTERS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 123,989
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE[1]

\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

REMANDED WITH INSTRUCTIONS.

**Michael Harson**
**District Attorney**
**Fifteenth Judicial District**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

---

[1] Originally, Judge Edwin D. Rubin was the district judge assigned to this matter. However, on the first remand, he recused himself, and Judge Earles was appointed to hear the case.

**Alan P. Haney**
**Assistant District Attorney**
**Fifteenth Judicial District**
**P. O. Box 4308**
**Lafayette, LA 70502**
**(337) 291-7009**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward J. Marquet**
**Louisiana Appellate Project**
**P. O. Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Bill Eric Winters**

**Bill Eric Winters**
**West Carroll Detention Center**
**P.O. Box 307**
**Epps, La 71237-0307**
**DEFENDANT/APPELLANT:**
    **Pro Se**

**PETERS, J.**

This matter comes before us for a second time. When first considered, this court had consolidated two separate appeals for disposition purposes. In those appeals, the defendant contested his conviction for the offense of simple burglary, a violation of La.R.S. 14:62, and his subsequent adjudication as an habitual offender pursuant to La.R.S. 15:529.1. This court remanded this matter to the trial court with instructions to that court to conduct a hearing pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986), to address the defendant's challenges to certain prospective jurors. *State v. Winters*, 11-581, 12-205 (La.App. 3 Cir. 6/6/12), 92 So.3d 1194.

Citing *State v. Nelson*, 10-1724, 10-1726 (La. 3/13/12), 85 So.3d 21, this court set forth the procedure to be applied in a *Batson* challenge situation:

> When a *Batson* challenge is asserted, the proponent bears the burden of presenting a *prima facie* showing of purposeful discrimination in the selection of the jury. The burden then shifts to the opponent to show a non-discriminatory basis for its peremptory challenge. The trial court then determines whether the proponent has carried his burden of proving purposeful discrimination.

*Id.* at 1198.

With regard to the record then before us, this court concluded that there existed a possibility that a *Batson* violation existed, but that the evidence was not sufficient for an appellate review of that issue. Following the supreme court's decision in *State v. Givens*, 99-3518 (La. 1/17/01), 776 So.2d 443, this court concluded that a remand was necessary:

> Here, the transcript does not indicate any off-the-record discussion that may have concerned the peremptory or *Batson* challenges. The minutes indicate which jurors were accepted and excused by the parties, but the transcript jumps from the point of causal challenges to the *Batson* reference after peremptory challenges were made and decided. Obviously, a discussion took place concerning the peremptory challenges because the minutes indicate

1

which potential jurors were excused by which party. However, neither the minutes nor the transcript contain that discussion or indicate whether any basis for each challenge was stated. Neither the minutes nor the transcript indicates the race of any of the potential jurors. What does appear in the record indicates the potential for a *Batson* violation. Further, the trial court erred when it failed to make the three-step *Batson* analysis when the defendant made his challenge and was denied the opportunity to present a *prima facie* showing of purposeful discrimination by the state. Unless the missing portion of the transcript can be furnished and shows the defendant in fact had that opportunity, this court, like the *Givens* court, must remand the matter for an evidentiary hearing to conduct the *Batson* analysis.

*Winters*, 92 So.3d at 1200.

In response to the remand, the trial court held a hearing on September 13, 2012. However, the trial judge presiding at the hearing, Judge Kristian Earles, was not the trial judge who presided at the original trial. At the beginning of the hearing, Judge Earles announced that the original judge, Judge Edward Rubin, had recused himself based on the possibility that he might be called as a witness. Additionally, concerning his role in these proceedings, Judge Earles asserted that "I really don't have a decision to make in this matter other than the fact that I'm making a record for [the appellate court] to review."

Thereafter, counsel for the State of Louisiana (state) and the defendant stipulated that those considered for this jury included four black males, five black females, six white males, eight white females, and one Hispanic male; that the jury ultimately selected included one black male, two white males, three white females; and that the alternate was the Hispanic male. The litigants also stipulated that the state peremptorily challenged three black males and two black females.

The state then called Randall McCann, the defendant's counsel at trial, as a witness. Mr. McCann testified that the state used only five of its peremptory

2

challenges, all on black prospective jurors. He then stated the following concerning these challenges:

> I made the *Batson* challenge claiming that none of those jurors should have been stricken for any particular reason. And then [counsel for the state] offered his reasons and Judge Rubin denied my Motion.

The state then called Alan Haney, counsel for the state in the defendant's trial, as a witness. He recalled that when the defendant's counsel first raised the *Batson* challenges, Judge Rubin did not wait for the state to present race-neutral reasons for exercising its challenges before ruling. Instead, Judge Rubin immediately rejected the *Batson* challenge. However, Mr. Haney testified that he recognized that if the record did not contain race-neutral reasons, the matter would be remanded by the reviewing court for failure to comply with the *Batson* three-prong analysis. That being the case, he testified that even after the ruling, he recited his race-neutral reasons to Judge Rubin. According to Mr. Haney, Judge Rubin did not comment concerning the sufficiency of his race-neutral reasons. Thus, the proceeding was left without a consideration of the second prong of the *Batson* analysis.

With regard to the race-neutral reasons provided to Judge Rubin, Mr. Haney testified that while the trial had occurred two years before his testimony and he was unable to find the notations he had made at the time, he did recall the basic reasons he had provided to Judge Rubin at the time of the *Batson* challenge. His basic recollection was that with regard to Ms. Hill, she had testified that her sister was a drug addict; and with regard to the remaining four jurors, he was concerned with their response to questions concerning whether someone should be punished

for stealing to feed his family. Based on this information, he decided to peremptorily challenge all five jurors.

The trial court did not comply with our remand instructions. The purpose of the remand was to have the trial court hold a hearing to establish the racial makeup of the jury pool and, particularly, of the five challenged jurors; to allow the defendant the opportunity to make a *prima facie* showing of purposeful discrimination on the record; and, if the defendant was successful in that regard, to require the state to show a non-discriminatory basis for its peremptory challenges of the five jurors at issue. Based on what would then be a complete record, the trial court was then to render a ruling on the defendant's *Batson* challenge. Obviously, the result of that ruling would have an impact on the status of the litigation, which could then be addressed by the trial court. Instead, the effect of the proceeding below was the creation of a record sufficient for a determination of the matter, but no decision on the primary issue.

Because of the procedural status of the matter before us, we must again pretermit a discussion of the remaining assignments of error in the original consolidated appeals and remand this matter to the trial court for a definitive ruling on the defendant's *Batson* challenge. In ordering the remand, we do note that the recusal of Judge Rubin creates a situation wherein the trial judge making the decision on this issue is different from the trial judge who heard the initial argument. However, given that Mr. Haney's testimony concerning the reasons for the states' challenges of the five prospective jurors was not challenged by the defendant, the record appears to be complete except for the ruling of the trial court on the third prong of the *Batson* analysis. Thus, Judge Earles may rule on the issue

4

based on the record before him, or he may, at his discretion, hold another hearing to secure additional evidence on the issue.

## DISPOSITION

We again pretermit consideration of the defendant's remaining assignments of error, and we remand this matter to the trial court for a ruling on the defendant's challenge to the makeup of the jury based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). The trial court may accomplish the requirements of this remand by either ruling on the issue based on the record generated at the September 13, 2012 hearing or conduct, in its discretion, an additional hearing to supplement the evidence received at that hearing. If an additional hearing is required, that hearing shall be held within thirty days of the rendition of this opinion, and a ruling is to be made within fifteen days thereafter. If the trial court concludes that an additional hearing is not necessary, the ruling shall be rendered within thirty days of the rendition of this opinion. The trial court is to then lodge an appellate record, containing the ruling of the trial court and a transcript of any necessitated hearing, within fifteen days of the trial court ruling.

**REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules —Courts of Appeal, Rule 2-16.3.